United States District Court
Southern District of Texas
ENTERED

JAN 0 8 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
- BROWNSVILLE DIVISION -

| | | |
|---|---|---|
| DERRY D. BLISS | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-98-069 |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY aka METLIFE | § | |
|     Defendant | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before this court is Defendant Metropolitan Life Insurance Company's ("MetLife") Motion for Summary Judgment and Brief in Support Thereof. (Docket No. 10). Plaintiff Derry D. Blish ("Blish") filed his Response to Defendant's Motion for Summary Judgment and Brief in Support Thereof. (Docket No. 15). MetLife filed a Reply to Plaintiff's Response to Motion for Summary Judgment and Motion to Strike Summary Judgment Evidence. (Docket No. 20).

For the reasons stated below, this court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED.

### FACTUAL BACKGROUND

Blish was employed as a store manager by Bealls Department Store which is owned by Stage Stores, Inc. ("Stage Stores"). The genesis of this suit is MetLife's denial of Blish's claim for long-term disability ("LTD") benefits under Stage Stores employee welfare benefit plan (the "Plan"), which is insured by MetLife and governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq ("ERISA"). (Docket

Nos. 1 & 10). Stage Stores serves as the Plan Administrator and MetLife serves as the claims administrator which is responsible for processing and evaluating claims for LTD benefits. (Docket No. 10).

Blish alleges that he became disabled on April 7, 1997 and has not worked since April 13, 1997. (Docket No. 1). On or about September 5, 1997, MetLife received Blish's claim for LTD benefits, the attending physician's statement, and job description. (Docket No. 10). The attending physician's statement completed by Dr. Mark Valverde indicated that Blish stopped working because he was suffering from Generalized Anxiety Disorder. (Docket No. 1 & 10).

MetLife, as part of its review of Blish's claim, requested Dr. Valverde to complete a mental status questionnaire, an activities of daily living questionnaire, and submit his office notes from Blish's sessions for January 1997 through September 1997. (Docket No. 10). In the mental status questionnaire, Dr. Valverde indicated Blish suffered from a Generalized Anxiety Disorder and that Blish felt harassed to quit his job as a store manager, secondary to age discrimination. (Docket No. 10 & 15). The questionnaire further indicated that Blish has the ability to remember locations and word-like procedures, has the ability to carry out short and simple instructions, and is able to perform activities within a schedule and sustain an organized routine. (Docket No. 10, Exhibit 7). The daily living activities questionnaire submitted to MetLife by Blish detailed that he was able to perform household repairs, wash dishes, clean up after his wife bakes pastries, play golf, shop, drive, visit friends and relatives, and participate in church activities every week. (Docket No. 10, Exhibit 8).

Dr. Valverde's office records noted that he had prescribed Blish 7.5 mg of Tranxene

2

for his condition in April 1997. (Docket No. 15). In his letters submitted by Blish's attorney to MetLife, Dr. Valverde indicated it was "his opinion that [Blish] was fully disabled," "unable to sustain any work at this time," and that the "extent of his disability is 'total'."[1] (Docket No. 10, Exhibit 14). However, Dr. Valverde never performed any psychological or other objective tests to determine whether Blish had any type of impairment which would prevent him from returning to work. (Docket No. 10, Exhibit 7).

On November 4, 1997, MetLife issued a letter denying Blish LTD benefits. (Docket No. 10 & 15). MetLife explained that its decision was based upon a review of all the medical documentation submitted by Blish, including the Dr. Valverde's statement completed on September 2, 1997, his office notes from April 9, 1997 through September 15, 1997, the mental status questionnaire, and the activities of daily living questionnaire. (Docket No. 10). MetLife explained that although Blish displayed some acute symptoms of anxiety from April 1997 through June 1997, the functional impairment was not of a severity which would preclude Blish from performing his duties as store manager throughout the required one hundred eighty (180) day elimination period.[2] ( Docket No. 10 & 15). Further, MetLife

---

[1] These letters are dated April 15, May 13, June 16, November 12, and December 23, 1997.

[2] The Plan requires the disability to extend throughout an elimination period (180 days after the last day worked) and beyond. The Plan defines disability as follows:
**"Disability" or "Disabled"** means that, due to an Injury or Sickness, you require the regular care and attendance of a Doctor and:
  1. you are unable to perform each of the material duties of our regular job; or
  2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; or
  3. you, while unable to perform all the material dutie of your regular job on a full-time basis, are:
    a. peforming at least one of the material duiteis fo your regular job or any other gainful

3

explained that no objective evidence had been submitted to substantiate Dr. Valverde's diagnosis of generalized anxiety. (Docket No. 10).

Blish brings this action to recover LTD benefits under the Plan which he alleges were wrongfully denied. (Docket No. 1). Blish contends that he is "disabled" as that term is defined in the Plan, and that MetLife's decision is unreasonable and contrary to the substantial evidence in this claim. (Docket No. 1). MetLife argues that its decision to deny Blish's claim for LTD benefits under the Plan is based on substantial evidence, reasonable, and not arbitrary and capricious. (Docket No. 10).

## APPLICABLE LAW AND DISCUSSION

### SUMMARY JUDGMENT

"To preclude summary judgment in defendant's favor, [the plaintiff] must make a showing sufficient to establish the existence of a genuine issue of material fact with respect to each material element on which he would carry the burden of proof at trial." *McGann v. H.&H. Music Co.*, 946 F.2d 401, 404 (5th Cir. 1991), *cert. denied*, 113 S.Ct.482 (1992). Summary judgment is proper if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In response to a properly supported motion, the adverse party must set forth specific facts showing that there is a genuine issue and may not rest upon the mere allegations or denials of the adverse party's pleading. Fed. R. Civ. P. 56(e).

---

       work or service on a part-time or full-time basis; and
    b. earning currently at least 20% less per month than your Indexed Basic Monthly Earnings due to that Injury or sickness. (Docket No. 10, Exhibit 15.

4

REVIEW OF ADMINISTRATOR'S INTERPRETATION OF PLAN TERMS.

The standard to be used when reviewing a denial of benefits based on an administrator's interpretation of the plan's terms depends on whether or not the plan grants discretion to the administrator to interpret plan terms. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). If the plan grants the administrator discretion, then deference should be given to his decision and a court would apply an abuse of discretion standard. *Firestone Tire and Rubber Co.*, 489 U.S. at 113. If the plan does not grant discretion to the administrator to interpret the plan terms, de novo review is appropriate. *Id.*

In the instant case, the Plan clearly affords Plan fiduciaries discretionary authority to interpret the terms of the Plan and determine eligibility to Plan benefits. Specifically, the Plan states:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Docket No. 10, Exhibit.1). Thus, because the Plan grants MetLife discretionary authority to make factual determinations and interpret plan terms, it is proper for this court to employ the abuse of discretion standard in reviewing MetLife's plan interpretation.

In reviewing whether a Plan administrator abused his discretion in interpreting the terms of the plan, some cases in the Fifth Circuit have suggested a two-step analysis. First, the reviewing court determines the legally correct interpretation of the plan. If the administrator does not give the plan the legally correct interpretation, the court must determine whether the administrator's decision was an abuse of discretion. *See, e.g.,*

5

*Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir. 1992); *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir. 1990), *cert. denied,* 498 U.S. 939 (1990); *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir. 1982). These cases further suggest other factors a court may consider in reviewing the administrator's interpretation. However, the Fifth Circuit recently noted in *Duhon v. Texaco,* 15 F.3d 1302, 1307 n.3 (5th Cir. 1994), that a reviewing court is not rigidly confined to this two-step analysis in every case.

Blish contends that there is a genuine issue of material fact exists with respect to whether Blish is "disabled" as that term is defined under the plan. However, this court is of the opinion that this case does not turn on sophisticated plan interpretation issues. No portion of the Plan language defining disability is even arguably ambiguous. Given the facts in this case, the Plan provides Blish LTD benefits only if he required (1) regular care and attendance of a Doctor and (2) was unable to perform each of the material duties of his regular job.[3] The language of the plan is clear. Therefore, it is this court's opinion that the issue is whether the evidence in the administrative record supports the administrator's factual determination that Blish is not disabled as the term is defined in the Plan.

REVIEW OF PLAN ADMINISTRATOR'S FACTUAL DETERMINATION

In reviewing a plan administrator's factual determination, there is no specific two-part test as set forth for the review of an administrator's plan interpretation. The only standard

---

[3] This is the only definition of "disability" that Blish would fall under given the facts of his case. Blish would not fall under any other definition as he was not receiving benefit payments or working on a full-time or part-time basis. *See supra* footnote 2 for definition of disability.

6

available to review a factual determination is abuse of discretion. *Rigby v. Bayer Corporation,* 933 F.Supp. 628, 632 (E.D.Tex.1996).

The meaning of "abuse of discretion" is difficult to ascertain. However, most courts equate the standard with "arbitrary and capricious."[4] When applying this differential standard to a factual determination, a district court must look only to the evidence available to the plan administrator at the time the challenged decision was made. *Southern Farm Bureau Life Insurance Co. v. Moore,* 993 F.2d 98, 102 (5th Cir. 1993); *Wildbur,* 974 F.2d at 642. Any evidence obtained after the administrator's review may not be considered by the court. *Rigby,* 933 F.Supp. at 633.

Review by the court is limited to determine whether there is substantial evidence in the record as a whole to support MetLife's decision. *Richard v. Perales,* 402 U.S. 389, 401 (1979). The Fifth Circuit has noted that "if a decision is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary and capricious." *Wildbur,* 974 F.2d at 646, n.12. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker]. Substantial evidence requires '*more than a scintilla but less than a preponderance.*'" *Rhodes v. Panhandle Eastern Corp.,* 1993 WL 346188 (E.D. La. 1993), *citing Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377, 382 (10th Cir. 1992)(emphasis added).

---

[4] *See Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir.1994)("the standard of review that we apply in our review of the plan administrator's decision is the arbitrary and capricious or abuse of discretion standard); *Wildbur v. ARCO Chem Co.,* 974 F.2d 631, 635, n.7 (5th Cir. 1992)("We detect only a semantic, not substantive difference" in the abuse of discretion and arbitrary and capricious labels.); *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1014 (5th Cir.1992)("In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily and capriciously.")

7

The weight to be given to a physician's statements depends upon the extent to which it is supported by specific clinical findings. *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983). In *Heckler*, the Fifth Circuit found that doctor's reports comprised solely of conclusions that a patient was "totally and permanently disabled" and that her ability to work was "restricted due to pain," absent any objective findings, do not support a claim for disability benefits. *Heckler*, 702 F.2d at 621; *see also Bernal v. Bowen,* 851 F.2d 297 (10th Cir. 1988)(a treating physician's report that is brief, conclusory and unsupported by medical evidence, and merely states that patient is disabled will not substantiate a claim for disability benefit).

On the record before us, the court is of the opinion that in the absence of objective evidence, MetLife's factual determination is supported by substantial evidence such that MetLife did not abuse its descretion. MetLife determined Blish was not totally disabled based on the records submitted by Blish, including Dr. Valverde's attending physician statement, his office notes, job description, mental health questionnaire, activities of daily living questionnaire, and a training, education and experience statement. (Docket No. 10 & 20). Blish, however, did not submit any objective evidence in support of his disability. In the mental health questionnaire, Dr. Valverde indicated that no objective tests had been performed to determine his impairment. (Docket No.10) Therefore, statements made by Dr. Valverde in his office notes and letters to MetLife, indicating that it was his "opinion that [Blish] was fully disabled," "unable to sustain work at this time," and that "the extent of his

disability is 'total'"[5] are merely conclusory. Conclusory statements will not substantiate a claim for disability benefits. MetLife's determination is further supported in light of the questionnaires detailing Blish's daily living activities and his current capabilities, and Dr. Valverde's notes indicating a good response to medication. *See supra*, Factual Background page 2.

Applying the foregoing principles to the case at bar, this court is of the opinion that there is substantial evidence in the administrative record to support MetLife's finding of ineligibility such that the determination was reasonable and not an abuse of discretion. Thus, no genuine issues of material fact exist with respect to whether MetLife's denial of LTD benefits is based on substantial evidence.

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

---

[5] Letters are dated April 15, May 13, June 16, August 14, November 12, and December 23, 1997. (Docket No. 10, Exhibit 14).

9

DONE at Brownsville, Texas, this the 8th day of January, 1999.

                                    John Wm. Black
                              United States Magistrate Judge